**Antwoin M. CRAIG, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 75395.**

Missouri Court of Appeals, Western District.

Oct. 8, 2013.

Evan Buchheim, Jefferson City, MO, for Respondent.

Frederick Ernst, Kansas City, MO, for Appellant.

Before Division One: VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS, and ANTHONY REX GABBERT, JJ.

ANTHONY REX GABBERT, Judge.

Antwoin M. Craig appeals the denial of his Rule 29.15 motion for post-conviction relief following an evidentiary hearing. In the underlying case, a jury found Craig guilty of one count of first-degree burglary. He was sentenced as a persistent offender to a prison term of fifteen years. Craig appealed his conviction and this court affirmed in *State v. Craig*, 338 S.W.3d 862 (Mo.App.2011). On July 1, 2011, Craig filed a *pro se* Rule 29.15 motion for post-conviction relief. On October 17, 2011, appointed counsel filed an amended motion. An evidentiary hearing was held on February 23, 2012. On March 12, 2012, the circuit court issued its corrected findings of fact and conclusions of law denying Craig's motion. In his post-conviction appeal, Craig asserts that the circuit court clearly erred in denying his post-conviction relief motion because his trial counsel was ineffective. He argues that his trial counsel should have objected to irrelevant and prejudicial "victim impact

type of testimony and argument about how the neighbors felt terrorized by the crime." Additionally, Craig asserts that his trial counsel failed to adequately address inconsistencies in witness statements and otherwise impeach the State's witnesses. We affirm.

The facts, viewed in the light most favorable to the verdict, are as follows: On April 18, 2008, Craig contacted his friend Seneca Harrison and discussed a plan to invade the home of Nolan Swartz. Harrison then transported his cousin, Anthony Jackson, and a juvenile to St. Joseph to meet up with Craig. After meeting, the men headed toward Swartz's home in two separate cars. At that time, Matt Stocking, his girlfriend Amy Carroll, and Jordan Conard were all inside Swartz's home. Conard, a friend of Swartz, had just recently arrived at the home to accompany Swartz to a local gym. When Swartz arrived home a few minutes later, he saw three males sitting in a red car across the street. The men stared at him, then drove off.

As Conard and Swartz were leaving, Harrison, Jackson, and the juvenile ran up to Conard and Harrison pulled a gun. One of the three men asked Conard, "Where are the goods at?" Harrison placed a pistol on Conard's chest and directed him to get on the porch of the house. When Conard complied, he was instructed to open the door. Thereafter, a series of events ensued that involved Harrison firing his gun at the door, the men kicking in the door, and once inside, the juvenile repeatedly shooting a gun into the ceiling of the residence before shooting the windows of the home out. Before leaving the home, Harrison, Jackson, and the juvenile took several items. After leaving the home, one of them fired back toward the house with an assault rifle.

Soon thereafter, Jackson, Harrison, the juvenile, and Craig met each other at a nearby Burger King restaurant. Harrison told the others that they needed to go back to retrieve his car keys as he had lost them. Craig drove Harrison, Jackson, and the juvenile back to within a block of the house and dropped them off. Eventually, Harrison, Jackson, and the juvenile were arrested and charged with the home invasion. Craig was later arrested when his involvement in the crime became evident.

■■■ Our review of the denial of a Rule 29.15 motion is limited to determining whether or not the circuit court's findings and conclusions are clearly erroneous. Rule 29.15(k). We presume that the circuit court's findings of fact and conclusions of law are correct. *Edwards v. State*, 200 S.W.3d 500, 509 (Mo. banc 2006). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Id.* (internal quotation and citation omitted.)

■■■ To prove ineffective assistance of counsel, Craig must meet the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Gennetten v. State*, 96 S.W.3d 143, 147 (Mo.App.2003). Under *Strickland*, Craig must establish that (1) his counsel failed to exercise the skill and diligence of a reasonably competent attorney under similar circumstances, and (2) that his counsel's deficient performance prejudiced him. *Id.* at 147–148; *Johnson v. State*, 333 S.W.3d 459, 463 (Mo. banc 2011). "Should a movant fail to satisfy either element, the appellate court on review need not consider the other." *Slater v. State*, 147 S.W.3d 97, 101 (Mo.App.2004). "To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been differ-

ent." *Williams v. State,* 386 S.W.3d 750, 753 (Mo. banc 2012) (internal quotations and citations omitted). We presume that counsel acted professionally and that counsel's actions were based on sound trial strategy. *Id.* To overcome this presumption, Craig must prove his claim for relief by a preponderance of the evidence. Rule 29.15(i); *Brock v. State,* 242 S.W.3d 430, 433 (Mo.App.2007).

In Craig's first point on appeal, he asserts that the circuit court clearly erred in denying his post-conviction relief motion because his trial counsel was ineffective for failing to object to "victim impact type of evidence and argument." He argues that, beginning with opening statements and continuing through trial and argument to the jury, the prosecutor commented on and elicited testimony concerning the impact of the crime on the neighbors. Craig argues that trial counsel should have objected to the evidence and argument because it was irrelevant and prejudicial, and there is a reasonable probability that the outcome of the trial would have been different had counsel done so.

Craig alleges that in opening statements the prosecutor made numerous references to the neighborhood being "terrorized" by the burglary. He states that at trial, neighbors who witnessed the crime, or were home at the time of the crime, testified that the neighborhood in which the crime took place was usually quiet and the incident "shattered [their] piece of mind." Neighbors testified that during the crime they were scared, frightened it might happen again, and it caused them to fear for the safety of their children. Craig contends that such argument and testimony had little probative value and was irrelevant, inadmissible, and prejudicial.

During Craig's post-conviction evidentiary hearing, Craig's trial counsel testified that he heard the prosecutor's opening statement and testimony from neighbors about the fact that the shooting occurred in a quiet neighborhood and that the neighbors felt "terrorized." Counsel was asked if he believed that the evidence or argument was objectionable. Counsel responded:

I think if there had been more of it, it would have been objectionable. I believe that it was able to be mentioned as little as it was because, quite frankly, it is a quiet—a fairly quiet town. To object to it at that point, I believe, would have kind of flown in the face of our trial strategy at that point because it would have—quite frankly I didn't want to make the jury mad if I would have objected to it at that point because I think the jury might have been mad. Why object to something like that, because obviously the jury would have known this is a fairly quiet town.

An examination of the record shows that, at trial, Craig's defense was to acknowledge that a serious crime had occurred, but proclaim that he had nothing to do with it. In closing argument, Craig's counsel stated:

A terrible thing happened back on April 8th of 2008, a terrible thing. I'm not saying it wasn't. Three men from Kansas City came up here to our town, shot up a house, stole stuff. Fortunately no one was hurt. That's what it boils down to. But this very same prosecuting attorney's office has prosecuted the people who did it. Those people are now either on probation or in prison, or they were juvenile and they got off light. But those people have been prosecuted. They have been punished. The prosecutor did their job. I say kudos, call it a day, that's it. Don't take one further step of going too far and trying to make a case out of something that really isn't there.

■ Thus, defense counsel's closing argument exemplifies that part of the defense's trial strategy was to acknowledge the gravity of the crime, join with jurors in expressing indignation that outsiders from "Kansas City" had encroached upon their town and inflicted harm, and plead that the true perpetrators had already been brought to justice. Therefore, even if the argument and evidence might have been objectionable, counsel's failure to object was reasonable in light of the defense's trial strategy. Craig has not overcome the presumption that counsel's failure to object was a strategic choice by competent counsel.[1] Craig's first point is denied.

■ In Craig's second point on appeal, he argues that the circuit court erred in denying his post-conviction relief motion because his trial counsel was ineffective for failing to adequately address inconsistencies in witness statements and otherwise impeach the State's witnesses. "Generally, the mere failure to impeach a witness does not entitle a movant to post-conviction relief." *Borst v. State*, 337 S.W.3d 95, 106 (Mo.App.2011). For relief, it is necessary for the movant to show that impeachment would have provided a viable defense. *Id.*

First, Craig contends that counsel failed to adequately impeach Jordan Conard. The significance of Conard's testimony, as applicable to Craig's conviction, was that he was at Swartz's home when the crime took place and a week or two afterward was approached by Craig. Conard testified that when he was approached by Craig, Craig stated to him that "he was the one that had some of his young n—— a's come up and do his work for him" and "that if he had been there he would have blown Matty's[2] head off." Craig admits that he did, in fact, speak with Conard, but denies Conard's version of that conversation. Although Craig acknowledges in his brief that his trial counsel pointed out inconsistencies in Conard's statements on some matters, he complains that Conard was inconsistent with regard to where his conversation with Craig took place and who else was in the vicinity during the conversation. He maintains that he was prejudiced by trial counsel's failure to press Conard on these specific inconsistencies.

■ We find Craig's complaint relatively insignificant in light of the fact that there is no dispute that Conard and Craig did converse and Conard's statements regarding what Craig told him never changed. Defense counsel presented one witness to the conversation who contradicted Conard and testified that, during Conard's conversation with Craig, Craig denied involvement in the crime. Thus, even if counsel could have attacked Conard's credibility further with these specific issues, Craig fails to show how additional credibility attacks would have provided a viable defense. We note that there was plenty of other evidence at trial, besides Conard's testimony, sufficient to convict Craig of the crime.[3]

---

1. As Craig fails to meet his burden of proving by a preponderance of the evidence that counsel's failure to object was not a strategic choice by competent counsel, we need not address whether the argument and evidence was, in fact, irrelevant, prejudicial, or otherwise objectionable.

2. Presumably referencing Matt Stocking who was at the home at the time of the crime and who was dating Amy Carroll, an acquaintance of Craig.

3. We decline to laboriously restate that evidence as the sufficiency of the evidence to convict Craig was addressed in Craig's first appeal. *Craig*, 338 S.W.3d 862. In that appeal, Craig did not contest the sufficiency of the evidence to prove that, armed with a deadly weapon, his co-conspirators knowingly

■ Second, Craig charges that counsel had a duty to further cross-examine Jackson, one of Craig's co-conspirators, about his testimony that he and the juvenile drove to Swartz's home in a red car while Craig and Harrison led in a black car. Craig contends that this conflicts with Conard's and Swartz's statements that they observed three males in a red car immediately prior to the crime. First, the evidence does not reflect that Conard ever stated that he saw three individuals in a red car—the evidence reflects that only Swartz made note of this. Second, the record reflects that in Jackson's April 19, 2008, statement to police, Jackson stated that Craig was in a black vehicle while he, the juvenile, and Harrison were in the red car. In his statement, where he references Craig as "Twan" [4] he says:

> We got up to St. Joseph and we met up with Twan. It was not too far from the house where the trouble happened. Sen got into Twan's car. Twan was driving a new, black Chevrolet Impala or Malibu.... [The juvenile] and I waited in Sen's car. Sen was driving a red Pontiac Grand Am.... Sen got back into the car about five minutes later. Sen got in back, [the juvenile] drove, and I was in the front passenger seat. Twan said follow him. [The juvenile] followed Twan for three or four blocks. Twan pulled off a block away. Seneca started eyeballing the white dude. Sen said this is the house. He told [the juvenile] to hit the block. [The juvenile] drove around the block and parked up the street.

Thus, if counsel had contradicted Jackson's trial testimony with the fact that Swartz saw three people and not two in the red vehicle, this might have led to the introduction of Jackson's prior inconsistent police statement which would have corroborated Swartz's account.

Further, the record reflects that counsel impeached Jackson's trial testimony with other prior inconsistent statements Jackson made to police. Counsel even elicited a statement from Jackson that, although he testified to observing Craig in the black car, he did not tell police of that fact. The record reflects that Jackson actually did tell police that Craig was driving the black car as evidenced ·by the above excerpt from Jackson's police statement. Clearly, Craig fails to prove a reasonable probability that the outcome of his trial would have been different if counsel had highlighted to Jackson that his trial testimony conflicted with the testimony of one of his victims.

■ Third, Craig indicates that Conard was held next to Jackson in jail and, therefore, counsel should have questioned Jackson regarding the possibility of Jackson and Conard comparing stories. It appears that Conard, although a victim to Jackson and Craig's crime, was arrested after the robbery because he was later stopped by police in a vehicle that contained drugs. In light of the fact that Craig has no proof that Jackson and Conard actually did compare stories and merely suggests that the two had the opportunity to do so, we find it a wild assertion that counsel had a duty to investigate the possibility that a victim and a perpetrator may have conspired together to randomly implicate Craig in the crime.

■ Fourth, Craig contends that at trial Jackson claimed to have never been to St. Joseph prior to the crime, but in his

---

and unlawfully entered Swartz's home at his behest. Rather, he claimed that the evidence showed that he merely intended for the men to recover money that he was owed and was insufficient to prove intent to steal.

4. The record reflects that Craig is also known as "Tweez" and "Tweezy."

statement to police mentioned running to a Burger King and seeing the juvenile accomplice at "33rd and Lafayette." Craig contends that counsel should have questioned Jackson about this inconsistency. Craig fails to meet his burden of demonstrating how this questioning would have changed the result of his trial. As previously stated, counsel impeached Jackson's trial testimony in other ways.

 Finally, Craig asserts that counsel failed to cross-examine Harrison about a statement he made in his deposition that incriminating statements he had made about Craig were made only to obtain a plea deal. Because the State admitted Harrison's incriminating statements into evidence, Craig argues that counsel should have cross-examined Harrison about his plea deal contention.

The record reflects that Harrison appeared to be a hostile witness for the State who initially stated that he would answer no questions. On cross-examination, defense counsel elicited from Harrison that Craig had nothing to do with the crime. Harrison was adamant with regard to Craig's noninvolvement. Defense counsel pointed out that Harrison's trial testimony was exactly the same as his prior deposition testimony, thereby suggesting that Harrison was consistent in his adamancy regarding Craig's innocence. Therefore, in light of the fact that Harrison insisted at trial that Craig was not involved in the crime, reintroducing Harrison's plea testimony would have reintroduced what counsel did not want the jury to hear—that Harrison had previously implicated Craig in the crime. Craig fails to show how reminding the jury that Harrison had previously implicated him would have changed the result of his trial.

We conclude, therefore, that the circuit court did not clearly err in denying Craig's Rule 29.15 motion for post-conviction relief. Craig's trial counsel was not ineffective for failing to object to the testimony of neighbors to the crime as Craig has failed overcome the presumption that counsel's failure to object was a strategic choice by competent counsel. Further, there is no evidence in the record that Craig's trial counsel failed to adequately address inconsistencies in witness statements and otherwise impeach the State's witnesses such that there is a reasonable probability that the outcome of Craig's trial would have been different. We affirm the circuit court's judgment.

All concur.